**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| IN RE: XCELERA.COM SECURITIES LITIGATION | ) CIVIL ACTION NO. ) 00-CV-11649 (RWZ) ) |
| _____ | ) ) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


**DEFENDANTS' MOTION IN LIMINE TO PRECLUDE IMPROPER FACTUAL AND
LEGAL TESTIMONY BY BALA DHARAN AND SCOTT HAKALA**

Pursuant to Federal Rules of Evidence 403 and 702, Defendants Xcelera Inc. ("Xcelera"),

Alexander M. Vik and Gustav M. Vik (collectively, "Defendants") respectfully submit this

motion *in limine* for an order precluding Plaintiffs from introducing improper factual and legal

testimony by their experts concerning a purported agreement between Xcelera and a third party

in 1999.  As grounds for the motion, Defendants state as follows:

1.  Plaintiffs seek to introduce the testimony of two experts at trial.  First, Plaintiffs

proffer Scott Hakala ("Hakala") an economist.  *See* Declaration of Scott Hakala, Ph.D. C.F.A.

("Hakala Report") ¶¶ 4-6 (describing scope of engagement).[1]  Second, Plaintiffs offer Bala

---

[1] Presently before the Court is Defendants' Motion to Preclude Expert Testimony of Scott Hakala, which sets forth the basis for precluding Hakala from testifying concerning loss causation and damages pursuant to Fed. R. Evid. 702 and 703 and on the grounds set forth in *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993), based on his failure to employ a reliable methodology.  Because that motion is *sub judice*, and the stipulated pre-trial deadline for motions in limine is March 7, 2008, Defendants submit this motion without waiver of the relief sought in the Motion to Preclude.

Dharan ("Dharan"), an accountant.  *See* Declaration of Bala Dharan ("Dharan Report") at 1

(describing scope of engagement).[2]

2.      Neither Hakala nor Dharan has been proffered as a fact witness, and neither

witness claims any percipient knowledge of facts relevant to this case.  Nonetheless, both have

offered extensive testimony as to the "facts"– namely whether Defendant Xcelera reached a

binding agreement with third party Tryggwe Karlsten to buy shares of Mirror Image Internet,

Inc. ("Mirror Inc.") before the release of either Xcelera's April 1, 1999 press release or the filing

of its 1999 Form 20-F.  *See* Hakala Report ¶¶ 5(b)-5(f); Transcript of Deposition of Scott D.

Hakala, dated August 9, 2007 ("Hakala Tr.") at 111:7; 216:13-223:25; Dharan Report at 3-5, 10,

12; Transcript of Deposition of Bala G. Dharan ("Dharan Tr.") at 35:13-36:5; 86:10-86:13;

86:22-87:6; 116:17-118:11; 139:21-140:5; 144:9-144:24; 150:20-151:11; 197:24-195:6; 201:14-

202:7.[3]  Both witnesses also purport to characterize the terms and legality of the disputed

arrangement between Xcelera and Karlsten.  *See* Dharan Report at 3, 5; Dharan Tr. at 118:5-

118:11; Hakala Tr. at 267:3-273:5.

3.      Because neither Hakala nor Dharan has personal knowledge of the facts regarding

the alleged agreement, neither is competent to testify about whether Xcelera and Karlsten entered

into a binding agreement.  Their factual and opinion testimony on this issue should therefore be

excluded under Fed. R. Evid. 702.  It should also be excluded as prejudicial under Fed. R. Evid.

403, as its introduction runs the risk of allowing Plaintiffs to usurp the role of the factfinder by

giving false imprimatur to Plaintiffs' version of disputed facts.

---

[2] The Hakala Report was previously submitted to this Court as Exhibit 8 to the Declaration of Robin L. Alperstein, dated September 20, 2007.  The Dharan Report was previously submitted to the Court as Exhibit 4 to the Declaration of Patrick T. Egan, dated October 22, 2007.  _____.
[3] The Hakala Transcript was previously submitted to the Court as Exhibit 9 to the Declaration of Robin L. Alperstein, dated September 20, 2007.  The Dharan Transcript was previously submitted to the Court as Exhibit 10 to the Declaration of Patrick T. Egan, dated October 22, 2007.

A.      **Dharan's Testimony**

4.      Dharan refers to "an agreement between Xcelera CEO Alexander Vik and Xcelera Director Tryggwe [*sic*] Karlsten," without demonstrating that such an agreement existed. Dharan Report at 3.   Further, one of Dharan's key supports for the alleged falsity of statements in Xcelera's 1999 20-F is the claimed existence of "the joint venture agreement between JAM and Xcelera."  *Id.* at 5.

5.      Dharan acknowledges that (a) the question of whether there is an agreement is a legal one (Dharan Tr. at 91:18-92:2; 92:17-92:20); (b) he is not qualified to opine on whether "something is or is not an agreement," (*id.* at 92:2-92:8); and (c) this question "needs to be also established independently in the trial by the plaintiffs."  *Id.* at 96:12-97:18.  Yet he contends that he "inferred" the existence of an agreement between Xcelera and Karlsten.  *See id.* at 89:6-90:16. Dharan specifically resists the suggestion that he is "making an assumption … that there was agreement," countering that his factual conclusion is "an inference I am making based on facts I have seen in evidence."  *Id.* at 92:9-92:16.

B.  **Hakala's Testimony**

6.      In Hakala's deposition, he asserts the existence of an agreement between Xcelera and a third party, describing "the deal that is done" in 1999 as one in which "no shares and no consideration is given to *the third party* that the company bought that 32 percent or approximately 32 percent of Mirror Image from."  Hakala Tr. at 216:15-217:3 (emphasis added). Hakala later asserts that the agreement could have involved Xcelera coming into possession of the additional shares of Mirror Inc. through a "third party [that] provided the financing for that." *Id.* at 217:6-217:11.  Hakala also categorically asserts his factual and legal conclusion that

Xcelera "did not own" 32% of Mirror Inc. stock before July 31, 2000 because it had not paid the third party for it.  *Id.* at 219:15-220:3; *see also id.* at 221-22.

7.      Hakala also takes a turn as a contract law and securities law expert, asserting that his conclusion follows from "a principle of equity," and alludes to a "whole literature" on the subject of "contingent contracts and agreements in joint ventures and partnerships."  *Id.* at 222:22-223:11.  Hakala offers the further legal conclusion that even after Xcelera had entered into a signed agreement with Karlsten's entities on July 31, 2000 in which those entities acknowledged Xcelera's ownership of the Mirror Inc. shares, Xcelera only "owned [the Mirror Inc. shares] contingent on fulfilling that agreement."  *Id.* at 219:18-219:19.

##    C.      Argument

8.      Federal Rule of Evidence 702 permits opinion testimony by an expert if that expert's "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue."  However, expert opinions regarding legal standards or the meaning of the law are generally impermissible.  *See Pelletier v. Main St. Textiles*, 470 F.3d 48, 54-55 (1st Cir. 2006) ("[T]he general rule is that it is the judge's role, not a witness's, to instruct the jury on the law."); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect....") (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997).

9.      Whether a binding agreement had been reached between Xcelera and a third party is a legal determination.  *See Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 229 (1st Cir. 2005) (question "regarding the existence of an enforceable

contract is a legal one"). The character of any such agreement is therefore, not the proper subject of expert testimony. *See Nieves-Villanueva*, 133 F.3d at 99, 100 (noting that an expert's legal opinion does not assist the jury under Rule 702 and stating "It is black-letter law that '[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge'") (quoting *United States v. Newman*, 49 F.3d 1, 7 (1st Cir. 1995)); *Cryovac, Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 364-65 (D. Del. 2006) (limiting expert's testimony because he "go[es] beyond opining on what the appropriate measure of damages should be, and make[s] what amounts to legal argument on patent and contract law").

10.    Both Dharan and Hakala have disclaimed that they are testifying as *legal* experts, or even that they have any expertise in contract law. *See* Hakala Tr. at 336:23-336:25; Dharan Tr. at 157:5-157:13. Their conclusions – whether stated as factual conclusions or opinions – as to the existence, terms, timing, validity and legal implications of any agreement between Xcelera and Karlsten or his entities are inadmissible as beyond the scope of their expertise. *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) (under Rule 702, "a district court acts properly by excluding opinions that are beyond the witness's expertise").

11.    Nor should Dharan or Hakala be permitted to provide factual testimony related to the existence and nature of any agreement between Xcelera and a third party. Neither has personal knowledge of the facts, rendering their testimony on this subject incompetent and inadmissible. *See* Fed. R. Evid. 602 (prohibiting fact testimony regarding matters of which the witness lacks personal knowledge).[4]

---

[4] Rule 703's limited exception permitting the admission of "facts or data … upon which an expert bases an opinion or inference" is inapplicable because neither expert has been proffered to opine on whether a contract existed.

12.     Their testimony should also be excluded as unduly prejudicial because any probative value is outweighed by its potential to substitute expert fact-finding for the jury's regarding disputed issues that are at the heart of the case.  *See* Fed. R. Evid. 403; *United States v. Montas*, 41 F.3d 775, 784 (1st Cir. 1994) (observing that "[e]xpert testimony on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value" and presents "the risk of unfair prejudice … [that] … such testimony might unduly influence the jury's own assessment of the inference that is being urged").

13.     Testimony on these issues by an expert witness risks divesting the jury of its role to determine the facts and apply the law.  *See Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (holding "that expert testimony that usurps … the role of the jury in applying that law to the facts before it, by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's") (quotations and citations omitted); *Van Blargan v. Williams Hospitality Corp.*, 754 F. Supp. 246, 250 (D.P.R. 1991) (concluding "that expert testimony on [hotel security] matters usurps the prerogative of the jury as the fact finder and would therefore not assist the jury in understanding the evidence or determining a main issue of fact in this case").

14.     Dharan's role is to testify on what the proper accounting treatment is for disclosing a definite, valid agreement *if* such an agreement exists.  *See* Dharan Report at 1.  If Dharan is permitted to explain that he has "inferred" the existence of such an agreement based on the evidence, and to provide his reasons for that "inference," Dharan will in effect function as a "thirteenth juror," telling the jury what factual conclusion they should reach on a material, disputed factual issue that does not require the assistance of an expert.  *See United States v. Anderskow*, 88 F.3d 245, 250 (3d Cir. 1996) (concluding it was error for a witness to testify that

6

the defendant "must have known" fraud was occurring as this opinion was not helpful to a trier

of fact called upon to evaluate the same evidence upon which the witness based his opinion).

Dharan also did not undertake any independent investigation into whether an agreement existed:

he based his factual conclusion entirely on the circumscribed evidence Plaintiffs provided to him.

*See* Dharan Tr. at 33:1-32:13; 39:19-39:25; 161:19-162:20.

15.     Hakala's deposition also includes testimony about whether an agreement exists

that must similarly be excluded.  Hakala's reasoning – that he is "reviewing" "as a financial

analyst," rather than as an expert in loss causation[5] (Hakala Tr. at 218:23 – 219:6) – amounts to

acting as a juror.  Like Hakala, the jury can "go back and look through the documents," and

decide whether to "interpret[] the third party's contribution as being in a sense a partnership or

joint venture," or whether to interpret it differently.  *Id.* at 220:16-220:24.  Because Hakala is not

bringing his expertise to bear on this question, his testimony as to these legal and factual issues

improperly intrudes upon the prerogative of the jury, and "undertakes to tell the jury what result

to reach."  *Nimely*, 414 F.3d at 397 (quotations and citations omitted).

---

[5] Hakala never purports to be an expert "financial analyst."  *Id.* at 218:25.  Thus, even if this line of testimony were not otherwise inadmissible, it should be excluded because Hakala has not been qualified to opine on these topics. *See* Fed. R. Evid. 702.

16.     For the foregoing reasons, Defendants respectfully request that the Court exclude

any testimony of Hakala or Dharan about the existence, timing and nature of an agreement

between Defendants and a third party.

Dated: March 7, 2008                          Respectfully submitted,

Robin L. Alperstein (admitted *pro hac vice*)     /s/ Peter J. Macdonald
BECKER, GLYNN, MELAMED                        Peter J. Macdonald (PM1239)
  & MUFFLY LLP                                Paul M. Winke (admitted *pro hac vice*)
299 Park Avenue                               David Zetlin-Jones (admitted *pro hac vice*)
New York, NY  10171                           WILMER CUTLER PICKERING
Telephone:  (212) 888-3033                      HALE AND DORR LLP
Facsimile:  (212) 888-0255                    399 Park Avenue
                                              New York, NY  10022
                                              Telephone: (212) 937-7223
                                              Facsimile: (212) 230-8888

          Counsel for Defendants Xcelera Inc., Alexander M. Vik, and Gustav M. Vik

8

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)**

Counsel for Defendants certifies that she has attempted in good faith to resolve or narrow the issues raised herein with Plaintiffs' counsel, but has been unable to do so.

<u>/s/  Robin L. Alperstein</u>

**CERTIFICATE OF SERVICE**

I, Christopher Carrion, hereby certify that the foregoing Defendants' Motion in Limine to Preclude Improper Factual and Legal Testimony by Bala Dharan and Scott Hakala, has been filed through the ECF system and will be sent electronically to the registered ECF participants and by sending paper copies to those indicated as non-registered participants on this 7th day of March, 2008.

                                        /s/ Christopher Carrion
                                  _____

                                        Christopher Carrion