UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 00-11649-RWZ

IN RE: XCELERA.COM SECURITIES LITIGATION

<u>ORDER</u>

April 25, 2008

ZOBEL, D.J.

Defendants have moved to preclude the testimony of plaintiffs' expert witness, Dr. Scott Hakala ("Hakala"), under Fed. R. Evid. 702 and <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993).  The motion is allowed.

Rule 702 permits expert testimony only if it is "the product of reliable principles and methods," and the expert has "applied the principles and methods reliably to the facts of the case."  Neither condition is satisfied here.  The methodology Hakala used in his event studies and his application of the methodology to the facts in this case is flawed in several respects:

• <u>Dummy variables</u>.  Hakala uses "dummy variables" for every date on which he claims there was any news at all about Xcelera that might have affected the stock price.  As a result, the dummy variables exclude over 130 of the 343 trading days in the Class Period.  Although the academic literature supports the use of dummy variables for events in which <u>significant</u> company-specific news is released, no peer-reviewed journal supports the view that dummy variables may be used on all dates on which <u>any</u> company news appears.

- <u>Failure to use relevant event dates</u>.  Hakala agrees that the Form 20-F, which first disclosed the dilution risk to the market, was released on the evening of July 31, 2000, after both the market and the after-hours market had closed.  Yet, he excludes August 1, 2000, from his event study entirely even though it was the first trading day after the corrective disclosure.  In addition, the Lazard Report, a significant analysis of the Form 20-F, was also released on the morning of August 1.  Hakala reasons that Xcelera's stock declined on July 31 due to negative anticipation regarding the earnings in the Form 20-F, and that the rise in stock price on August 1 was "offset" by the July 31 decline, such that August 1 is not a relevant date.  Yet, there is no evidence of negative anticipation driving down the price of Xcelera's stock on July 31.  Hakala's first event study, which, as discussed above, included every instance he found of company-specific data that might affect the stock price, did not include July 31 as a relevant date. Although he cited one bulletin board posting from July 30 which suggested the earnings report would be negative, this sole posting fails to establish the existence of a negative anticipatory effect significant enough to offset the August 1 stock increase.  Quite simply, his theory does not match the facts.  <u>See</u> <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997) (courts need not admit "opinion evidence which is connected to existing data only by the <u>ipse dixit</u> of the expert").

- <u>Market Efficiency</u>.  Hakala's exclusion of August 1 as a relevant date, and his inclusion of August 9 as a relevant date, cannot be squared with the theory of

2

market efficiency.  Under First Circuit jurisprudence, the hallmark of market efficiency is the inability of an ordinary investor to profit by trading on new information.  See In re PolyMedica Corp. Sec. Litig., 432 F.3d 1, 8 (1st Cir. 2005).  This inability stems from the fact that the stock price "fully reflects all publicly available information" such that "prices respond so quickly to new information that it is impossible for traders to make trading profits on the basis of that information."  Id. at 14 (internal citation omitted); see also In re Xcelera.com Sec. Litig., 430 F.3d 503, 513 (1st Cir. 2005) (considering the "most important" factor in finding market efficiency to be "a historical cause-and-effect relationship between company disclosures and an immediate response in stock price").  Yet, under the methodology utilized by Hakala, Xcelera's stock price does not reflect the disclosure of the dilution risk until August 2 even though the Form 20-F was issued on the evening of July 31 and the Lazard Report, in the morning of August 1.

Moreover, as Hakala previously testified, in an efficient market the release of previously-known information will not effect the stock price. See Xcelera, 430 F.2d at 513.  Yet, he includes as relevant events the Morningstar.com and On24 releases even though the Morningstar.com article does not provide any information not disclosed by the Lazard Report, and the bulletin board posting cited by plaintiffs for the On24 interview (the transcript for the interview is not even available) indicates only that the interview concerned

exactly what was discussed in the Lazard Report.[1]  Similarly, he includes the

August 9 Byron Article as a relevant event even though it is merely a rehash of

information disclosed in the Lazard article, albeit with the addition of simple

mathematical calculations.  Finally, Hakala's use of last prices instead of closing

prices is also inconsistent with the theory of market efficiency, given the far

lower trading volume in after-hours trading.

• <u>Confounding Factors</u>.  Hakala's analysis fails to take into consideration other

factors that affected Xcelera's stock price in August 2000.  Hakala opines that

the risk the company would be classified as a Foreign Personal Holding

Company (the "tax risk") was fully disclosed in mid-July 2000, and accordingly

subsequent discussion of the issue could not have affected the stock price.  Yet,

a survey of the identified disclosures shows that this opinion simply does not fit

the facts.  The Lazard Report, which stated that the Form 20-F "revealed many

new insights" about Xcelera and "listed the most significant issues . . . in order of

importance," listed the tax risk first and discussed it in great detail, and listed

several other issues in addition to the tax risk and the dilution risk.  Similarly, the

Morningstar.com article analyzed the earnings report and concluded that without

the inclusion of a one-time gain the company would have lost $0.06 in net

income per share instead of gaining $0.11 per share; it also questioned Mirror

---

[1] Hakala puts the Morningstar.com report in his event study under August 2, notwithstanding his testimony that the report was issued at 2:30 EST on August 1. Similarly, he includes an article from the New York Observer in his event study under August 8, even though the article was first published on May 1, 2000.  In the latter instance he admitted his error during the evidentiary hearing.

Image's ability to generate revenue.  Hakala opines that the stock price decline on August 9 can be attributed entirely to the discussion of the dilution risk in the Byron Article.  Yet, the article contains twelve pages of primarily negative discussion related to, <u>inter alia</u>, stock sales by company insiders, the tax risk, so-called "phantom income," the infrequency of Xcelera's public filings and Xcelera's business strategy, before discussing, in one paragraph, the dilution risk previously disclosed by the Form 20-F.

Accordingly, Defendants' Motion to Preclude the Expert Opinion of Scott Hakala (Docket # 226) is ALLOWED.


<u>     April 25, 2008     </u>                    <u>          /s/Rya W. Zobel          </u>
DATE                                              RYA W. ZOBEL
                                        UNITED STATES DISTRICT JUDGE